IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOHNNY RAY SIMS**                                                              PETITIONER

VS.                                                      CIVIL ACTION **NO.1:13CV533KS-MTP**

**JACQUELYN BANKS**                                                              RESPONDENT

ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION

This cause is before the Court on Petition of Johnny Ray Sims Pursuant to 28 U.S.C. § 2254 [1], and the Court considering same and also considering the Report and Recommendation filed April 12, 2016, by United States Magistrate Judge Michael T. Parker, does hereby find as follows.

I. FACTS AND PROCEDURAL HISTORY

On March 1, 2006, Mary Glen Knight (Knight) spent the day caring for her three great-grandchildren–five-year-old Jamaya Griffith, four-year-old Jané Griffith, and their baby sister, Jaylyn Knight. Knight lived on Doc Bass Lane in rural Jefferson Davis County, Mississippi. Sims and his sister, Margaret, lived down the street from Knight. Sims lived in a house he inherited from his parents, and Margaret lived in a trailer behind Sims's house.

Jané, who was ten-years old at the time of trial, testified that on the day of March 1, 2006, she and Jamaya spent the day playing in the front yard of Knight's house. Jané stated that Sims approached the girls and asked if their uncle, Lee Morris Knight, was at home. When Jané told Sims that their uncle was at the hospital, Sims asked Jané if she wanted to come over to his house and see his new big screen television. Jané responded that she would have to first check with her great-grandmother to obtain permission.

Knight testified that while Jamaya and Jané played outside in her front yard, she remained inside of the house. Knight explained that when she heard a man's voice outside, she went to the porch to investigate. Knight spotted Sims, and she stated that once Sims saw her, he left the premises and walked down the road towards his house. Knight asked Jané what Sims had said to her, and Jané repeated that Sims had invited her over to see his big screen television. Knight testified that during this conversation, Jamaya was standing beside her on the porch.

Knight then went back inside of the house to retrieve her laundry, and when she returned to the porch, she testified that Jamaya was no longer in the yard. Jané told Knight she had last seen Jamaya riding her bike down the street and following Sims. Concerned, Knight began searching for Jamaya in the yard and inside of Knight's house. When she failed to find Jamaya, Knight then went to Sims's house, where she began knocking on the door and yelling for both Jamaya and Sims. Knight testified she never saw Jamaya's bicycle outside of Sims's house during her search. Knight's granddaughter, Regina Knight, and daughter, Marlene Asencio, arrived approximately thirty to forty minutes after Knight had started searching for Jamaya.

Knight testified that Sims's sister, Margaret, eventually came home. Knight asked Margaret to go into Sims's house and see if he was inside of the house. Margaret beat on the door, but no one answered. Margaret entered Sims's house through a side door, and then she came out and told Knight that Sims had been asleep. Sims opened the door and exited the house, and he explained that he had been asleep when Knight banged on the door.

Marlene testified that upon arriving on Doc Bass Lane, she went to Sims's house and found Sims outside, Marlene asked Sims to search his house, but in response, Sims walked next door to Margaret's trailer. According to Marlene, Margaret eventually asked the women if they wanted to search Sims's house. Marlene testified that she then observed Sims walk down from

Margaret's trailer and enter the house through a side window. Marlene heard Sims move furniture around before finally unlocking the door. Marlene stated that after entering the house, she smelled bleach in the bathroom. Upon entering the bathroom, she observed Sims's shirt soaking in bleach, and Marlene testified that "it looked to me like there was blood" on the shirt. Marlene asked Sims why his shirt looked like it had blood on it. Sims denied that his shirt had any blood on it. Marlene testified that she and Knight proceeded to search the house, but they did not check in the closets or in two of the bedrooms. After failing to find Jamaya, Knight and Marlene called the Jefferson Davis County Sheriff's Department.

Deputy Sheriff Ronnie Barnes of the Jefferson Davis County Sheriff's Department responded to the call. When he arrived at Doc Bass Lane, he spoke with the family and then began searching for Jamaya. Barnes questioned Sims, and Sims claimed that he saw Jamaya riding down the road on her bike. Barnes continued to search for Jamaya until Sheriff McCullum summoned him back to Sims's house. Sheriff McCullum then asked Deputy Barnes to search Sims's house.

Deputy Barnes testified that upon entering Sims's house, he found Jamaya's bicycle, covered by a blanket. He also noticed a strong smell of gasoline. Deputy Barnes eventually found Jamaya's body, clothed only in a shirt and socks, and lying under a pile of clothes inside the closet of the southwest bedroom. Deputy Barnes called the Mississippi Bureau of Investigation (MBI) for assistance; he then roped off the crime scene and waited for the MBI investigators to arrive.

After his arrest, Sims denied harming Jamaya, and he informed the MBI investigators that earlier that day, he and a friend had driven to Bassfield, Mississippi. Sims explained to the investigators that his girlfriend, Angie Robinson, bleached his shirt that had been worn earlier in

the day. Sims informed the investigators that a friend, whom Sims identified as Kenny, also visited his house that day. Sims was unable to provide any identifying details about Kenny; he did not know Kenny's last name, his address, where he had met Kenny; and he could not describe Kenny's vehicle. Sims stated that he went to sleep and woke up to knocking on his front door. Sims denied having visited Knight's house earlier that day.

A crime scene analyst with the MBI testified as to his investigation of the crime scene. The investigator found Jamaya's underwear in the closet next to her body. Jamaya's pants, one of her shoes, and a bloody knife were found in a piece of carpet rolled up in the laundry room. The investigator found Jamaya's other shoe under the bed in the southwest bedroom. The investigator testified he found blood stains on the mattress in that same bedroom, as well as blood spatters on the wall beside the bed containing the bloody mattress.

Jamaya's underwear, Jamaya's pants, Sims's underwear, the knife believed to have been used to kill Jamaya, and a swatch from the mattress in Sims's bedroom all tested positive for blood. DNA tests established that a hair removed from Jamaya's vaginal area belonged to Sims, and the blood on Sims's underwear and on the mattress contained a mixture of Sims's DNA and Jamaya's DNA. Sims's fingerprint and a palm print were also recovered from the middle of Jamaya's bicycle handlebar.

At trial, Dr. Steven Hayne, the forensic pathologist who performed the autopsy on Jamaya's body, testified that he found a total of twelve stab wounds to Jamaya's body. Dr. Hayne also found superficial injuries to Jamaya's face and neck. Dr. Hayne testified that the bruising around Jamaya's neck and the small areas of bleeding over the facial area were consistent with incomplete strangulation. Dr. Hayne also noted a one-inch tear to the vulva and vaginal area, which produced blood. Dr. Hayne ultimately listed the cause of Jamaya's death as

multiple stab wounds. Dr. Hayne testified that the knife found rolled up in the carpet in the utility room appeared consistent with the stab sounds on Jamaya's body.

On April 2, 2010, Petitioner was convicted of capital murder, with the underlying charge of kidnapping, in the Circuit Court of Jefferson Davis County, Mississippi. (State Court Record [12-10] at 147-48.) Petitioner was sentenced as a habitual offender to life imprisonment in the custody of the Mississippi Department of Corrections, pursuant to Miss. Code Ann. § 99-19-81. *Id.*

On May 6, 2010, Petitioner, through counsel, appealed his conviction to the Mississippi Supreme Court, raising the following ground for relief:

> The trial court should have granted Sims' Motion for a Directed Verdict because the evidence was insufficient to support the conviction of capital murder.

([12-21] at 176; [12-19] at 3-13.) On November 1, 2011, the Mississippi Court of Appeals affirmed Petitioner's conviction in a written opinion. *See Sims v. State*, 93 So. 3d 37 (Miss. App. 2011), *reh'g denied* May 1, 2012, *cert. denied*, July 26, 2012.

On November 29, 2012, Petitioner sought leave from the Mississippi Supreme Court to file his motion for post-conviction collateral relief in the trial court in which he asserted the following grounds (as stated by the *pro se* Petitioner):

1. Whether the trial court erred in failing to disqualify the district attorney's office

2. Whether the trial court erred in denying Sims's Motion(s) to Suppress (A) without probable cause; (B) illegal arrest; (C) illegal search and seizures [sic]; (D) fruits of the poison [sic] tree, etc.

3. Whether the trial court errored [sic] in allowing broken chain of custody evidence to be used.

> 4. Evidence was insufficient to support conviction for capital murder as the State failed to prove the elements of the underlying felony kidnapping charge beyond a reasonable doubt.
>
> 5. Whether the evidence presented by the State was legally sufficient to support a verdict of guilty.
>
> 6. Whether Petitioner was denied the effective assistance of counsel when his trial counsel failed to raise the issues of:
>
>    (1) whether the trial court erred in failing to disqualify the district attorney's office;
>
>    (2) whether the trial court erred in denying Sims's Motion(s) to Suppress; and
>
>    (3) whether the trial court errored [sic] in allowing broken chain of custody evidence to be used,
>
>    in his motion for judgment notwithstanding the verdict or in the alternative for new trial and . . .
>
>    Whether Petitioner was further denied the effective assistance of counsel on direct appeal when his appellate counsel failed and refused to raise the same Issues 1, 2, and 3 in the brief of the appellant, all in direct violation of his Sixth Amendment to the United States Constitution and Mississippi Constitution, Article 3, Section 26.

([12-22] at 7-21.)

The Mississippi Supreme Court denied Petitioner's application stating,

> The panel finds that Sims's claims of ineffective assistance of counsel do not pass the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Those issues raised pertaining to the sufficiency of the evidence are barred by the doctrine of *res judicata*. The remaining claims put forth by Sims were either addressed on direct appeal or they were capable of being addressed and are waived. Waiver notwithstanding, these issues are also without merit. Accordingly, the panel finds that the application for leave should be denied.

(Order [11-2].) On June 10, 2013, Petitioner filed the instant Petition for writ of habeas corpus, asserting the same grounds for relief he asserted in his collateral proceeding before the Mississippi Supreme Court.

## II. STANDARD OF REVIEW

When a party objects to a Report and Recommendation this Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). See also *Longmire v. Gust*, 921 F. 2d 620, 623 (5th Cir. 1991) (Party is "entitled to a *de novo* review by an Article III Judge as to those issues to which an objection is made.") Such a review means that this Court will examine the entire record, and will make an independent assessment of the law. The Court is not required, however, to reiterate the findings and conclusions of the Magistrate Judge, *Koetting v. Thompson*, 995 F. 2d 37, 40 (5th Cir. 1993) nor need it consider objections that are frivolous conclusive or general in nature. *Battle v. United States Parole Commission*, 834 F. 2d 419, 421 (5th Cir. 1987). No factual objection is raised when a petitioner merely reurges arguments contained in the original petition. *Edmond v. Collins*, 8 F. 3d 290, 293 (5th Cir. 1993).

## III. PETITIONER'S OBJECTIONS AND ANALYSIS

Petitioner's objections to the Magistrate's report argues that none of his claims are procedurally barred. He argues that the state courts applied procedural bars to Petitioner that it clearly and unequivocally excuses and that it does not strictly and regularly apply, therefore the procedural default doctrine cannot apply in this case. A state has failed to strictly and regularly apply a procedural rule only when the state "clearly and unequivocally excuses the procedural default," and when the state fails to apply the rule to claims "identical or similar" to the

petitioner's claim. *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995). Petitioner bears the burden of establishing that the State did not strictly or regularly follow a procedural bar. *Stokes v. Anderson*, 123 F. 3d 858, 860 (5th Cir. 1997). A burden that Petitioner has not met. M.C.A. 99-39-21 states that:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Miss Code § 99-39-21(1).

Applying this rule correctly, it is clear that because Petitioner failed to present Grounds One, Two, Three, and Five in the habeas petition to the Mississippi Supreme Court on direct appeal this would constitute a waiver and therefore they are procedurally barred.

A federal court may consider a defaulted claim under two narrow exceptions: cause and actual prejudice or miscarriage of justice. *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2005). In his objection Petitioner first claims he has shown cause by demonstrating ineffective assistance of counsel. He claims that the state courts decision was an unreasonable application of the standard set in *Strickland v. Washington*. In ground six Petitioner tried to make this same ineffective assistance of counsel argument, which was considered by the Mississippi Supreme Court, considered by the Magistrate Judge on the merits, and will be considered here. However as cited by the Magistrate Judge: The United States Supreme Court has held that "the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose

performance is not constitutionally ineffective under the standard established in *Strickland* . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. *Murray v. Carrier*, 477 U.S. 479, 488 (1986).

Petitioner also claims in his objection he has shown a miscarriage of justice by making a persuasive showing that he is actually innocent of kidnapping and thus is innocent of capital murder. However this claim, being Ground Four, was also considered on the merits and will be considered here, does nothing to show that the previous procedurally barred claims should not have been procedurally barred. Therefore Petitioner has not overcome the procedural bar for Grounds One, Two, Three, and Five, and relief on those grounds should be denied.

The Magistrate Judge concluded that Grounds Four and Six may be reviewed by this Court, and may be considered on the merits. The standard of review for these claims is set forth in 28 U.S.C. § 2254(d) which provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The "contrary to" clause applies when the state court fails to apply a legal rule announced by the Supreme Court or reaches a result opposite to a previous decision of the Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The unreasonable application clause applies when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular

prisoner's case." *Id.* at 407-08. The "unreasonable application" inquiry is based on an objective standard, and "unreasonable" does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496,500 (5th Cir. 2004). Petitioner claims in his Petition and objection that even under these strict standards he is entitled to federal habeas relief.

In Ground Four, Petitioner claims that the evidence was insufficient to support a finding that he kidnapped the victim, and therefore, was insufficient to support a conviction of capital murder. Miss Code Ann. § 97-3-53 provides the crime of kidnapping as:

> Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will, or without lawful authority shall forcibly seize, inveigle or kidnap . . . any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child upon conviction shall be imprisoned
> . . . .

Petitioner disregards the fact that "circumstantial evidence is sufficient to prove the elements of kidnapping, and direct evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." *Sims*, 93 So. 3d at 42 (quoting *Underwood v. State*, 708 So. 2d 18. 35 (Miss. 1998)). The State presented evidence showing that Jamaya's body and bicycle were found in Petitioner's home. Her clothes had been removed and there was damage to her neck, face, and vaginal and rectal area. This is sufficient circumstantial evidence to prove the elements of kidnapping such that a reasonable and fair-minded jury could have found that Petitioner inveigled Jamaya with the intent to cause her to be secretly confined or imprisoned against her will. Because of these reasons habeas relief on this

claim should be denied.

In Ground Six Petitioner maintains his trial and appellate counsel provided him with ineffective assistance, and that the state court's determination of his claim was both contrary to, and an unreasonable application of the *Strickland* standard. Petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show a deficiency, Petitioner must show that "counsel made errors so serious that counsel was not functioning as is guaranteed by the Sixth Amendment. *Id.* In order to show prejudice Petitioner must show counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.*

Petitioner has failed to meet this burden set in *Stickland*. An ineffective assistance of counsel claim must be stated with specificity. *Koch v. Puckett*, 907 F. 2d 524, 530 (5th Cir. (1990). Petitioner fails to point out specific instances showing where his counsel's performance was deficient and how that deficiency prejudiced the defense. In his objection Petitioner simply attempts to retry the case, citing case law in hopes of persuading the Court that he was wrongly convicted, rather than providing specific instances of what his counsel did or did not do. Simply citing general complaints about counsel's performance without discussing their specific basis or how application of the law justifies relief does not state a claim for habeas review. *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005). Because Petitioner has failed to meet the standard required in *Strickland* habeas relief on this claim should be denied.

## IV. CONCLUSION

As required by 28 U.S.C. § 636(b)(1) this Court has conducted an independent review of the entire record and a *de novo* review of the matters raised by the objection. For the reasons set forth above, this Court concludes that Petitioner's objection should be **overruled.** The Court further concludes that the Proposed Report and Recommendation is an accurate statement of the facts and the correct analysis of the law in all regards. Therefore, the Court accepts, approves, and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Report and Recommendation.

Accordingly, it is ordered that the United States Magistrate Judge Michael T. Parker's Report and Recommendation is accepted pursuant to 28 U.S.C. § 636(b)(1) and that Petitioner's relief sought in his Petition is **denied** and that the Petition be **dismissed with prejudice**.

**SO ORDERED AND ADJUDGED** on this, the 24th day of June, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE